Smith, Beverly

## DECLARATION OF BEVERLY SMITH

I, Beverly Smith, make the following statement:

1.      I am more than 18 years of age. I reside in Weston, Florida.

2.      Rincon Management Services ("Rincon") first contacted me and my husband through a good friend who lives in New Jersey. I received a call from my friend on February 26, 2011, which was a Saturday. My friend said that a company named Rincon Management Services was looking for my husband, Brian Smith. My friend told me that early that morning, a person had called her home and spoken to her 16-year-old daughter. My friend said the caller asked her daughter whether she knew a Brian Smith and asked her for his contact information, but my friend's daughter said she could not give it out. Her daughter told the person to call back later and speak to her parents. The caller, however, continued to solicit information from my friend's daughter.

3.      The same person called again later that day and spoke to my friend. My friend told me that the caller asked my her for the same information she had tried to obtain from my friend's daughter. My friend told me she avoided disclosing Brian's contact information and was non-committal about whether she even knew him. When the caller told my friend that if the company could not reach Brian that same day it would sue him and issue a warrant for his arrest, she agreed to take a message that included a phone number, 877-717-9946, and a "case number," which I do not remember. The caller left instructions for Brian to call the company as soon as possible. The caller did not tell my friend why Brian was purportedly being sued.

4.      When Brian and I received that news, my husband became very worried. Brian thought the lawsuit could relate to someone he terminated at his work. Brian was in a panic, so we called the company right away. Brian did all the talking on that first call and I listened to the conversation on a separate receiver.

5.      The woman who answered the call identified herself as Kelly Harris and told Brian that she worked for Rincon Management Services. She described her employer as a company that files lawsuits on behalf of third-party companies and told Brian he was being sued. After Brian pushed her for more information, she said that the lawsuit involved an unpaid debt he supposedly owed on a JC Penney credit card issued through GE Money Bank.

6.      News of the JC Penny debt took us aback because we had not shopped at JC Penny for many years and remembered having closed the credit account at least twelve years ago. Brian explained this to Ms. Harris and she claimed that Brian still owed $400 on the card, but that Rincon would settle the claim for $250 if he paid that day. She threatened that Brian would be sued and arrested if the debt was not paid. Brian decided then to give Ms. Harris his American Express card number to pay the debt. Ms. Harris stated that she would process the payment the following Monday, which was two days later, and that she would email Brian a settlement agreement that he would need to sign and return to her.

7.      After the call, Brian and I talked and we knew something was not right. Brian called JC Penney and GE Money Bank and confirmed that he owed no money on the card. We also looked up Rincon on the Internet and found many complaints from consumers who claimed that Rincon had called them and threatened a lawsuit and arrest if the consumer did not pay up on some old debt. After that Brian called American Express and asked that they block the $250 payment to Rincon.

8.      On the morning of Monday, February 28, 2011, I received a call from Ms. Harris. She told me that the payment we had authorized over the phone had not gone through and she wanted to know why. I explained to her that Brian had cancelled the transaction because we did not believe it was legitimate, and that we had already verified that Brian did not owe the money she claimed. I asked Ms. Harris to provide us written proof of the debt, and she claimed she had already

1  mailed us a letter with that information in December.  She said that she had mailed

2  it to our home address, but neither Brian nor I recall receiving any such letter.  Ms.

3  Harris threatened again that if we did not pay on this debt, that Brian would be

4  sued very soon that a sheriff would be coming to our house to arrest him.  At that

5  point, I told Ms. Harris that I believed that she was part of a scam, demanded that

6  the company not call us anymore and hung up the phone.  It seemed that the

7  company may have called us again, but because the call was from an unavailable

8  number, we did not answer the phone.

9       9.      This incident with Rincon has been extremely stressful.  My husband

10  and I decided to change our phone number because every time the phone rang, I

11  was filled with anxiety and fear that it might be Rincon.  We also changed our

12  bank account numbers and put a freeze on our credit reports.  Doing this took a lot

13  of time and effort on our part.

14       10.     Since the calls in February, we have not heard back from Rincon.

15  None of the terrible things the company threatened would happen came to pass.

16  Brian has not been sued, nor arrested.

17       11.     On February 28, 2011, we filed a complaint with the Florida Attorney

18  General, which referred us to the California Attorney General because Rincon

19  appears to be based in that state.  The California Attorney General in turn advised

20  us to file our complaint with the Federal Trade Commission, which we did that

21  same day.

22       I declare under penalty of perjury that the foregoing statement is true and

23  correct.  Executed on July _19_, 2011, in Weston, Florida.

24

25                                          Beverly Smith

26

27

28

3157

Smith, Brian

## DECLARATION OF BRIAN SMITH

I, Brian Smith, make the following statement:

1.     I am more than 18 years of age.  I reside in Weston, Florida.

2.     Rincon Management Services first contacted me through a good friend of my wife who lives in New Jersey.  On or around February 26, 2011, my wife, Beverly Smith, told me that she received a call from her friend who said that a company named Rincon Management Services was looking for me.  Beverly's friend told her early that morning a person had called her home and spoken to her 16-year-old daughter.  Beverly's friend said the caller asked her daughter whether she knew a man named Brian Smith and asked her for my contact information. Beverly's friend's daughter said that she could not give out that information and told the caller to call back later and speak to her parents, but the caller continued to solicit information from her.

3.     The same person called Beverly's friend's home again later that day and this time spoke to her directly.  Her friend avoided disclosing my contact information and was non-committal about whether she knew me.  When the caller told Beverly's friend that if the company could not reach me that same day it would sue me and issue a warrant for my arrest, she agreed to take a message that included a phone number, a case number and instructions for me to call the company as soon as possible.  The caller did not tell my friend why I was purportedly being sued.

4.     When Beverly and I received this message, we became very worried. Because I have held jobs where I have hired and fired many people, I knew that facing a lawsuit from a former employee was a very real possibility for me.  In a panic, we called the company right away.  I did all the talking during that first call, while Beverly listened to the conversation on a separate receiver.

5.     The woman who answered the call identified herself as Kelly Harris and told me she worked for Rincon Management Services ("Rincon").  At first she

1 described her employer as a company that files lawsuits on behalf of third-party

2 companies and told me that I was being sued. It was not until I asked what this

3 lawsuit was about that she told me she was calling about an unpaid debt I

4 supposedly owed the JC Penney department store, with GE Money Bank as the

5 issuer of the store credit card.

6       6.    Beverly and I were surprised to hear that because we have not

7 shopped at JC Penney in many years and had closed that credit card account about

8 12 years ago. I relayed this to Ms. Harris and she said that it looked like I still

9 owed $400 on the account, but that Rincon would be willing to settle the debt for

10 $250 if I paid right away. It was clear to us that she had access to our credit reports

11 because as she said that, she directed to look at "page four" of my credit report,

12 which lists the status of our JC Penney account. Ms. Harris also told me that if I

13 did not pay the debt, I would be sued and the sheriff would come to our house and

14 arrest me. At that moment I had a great sense of relief that at least I was not being

15 sued by a former employee. I was also relieved that all I needed to do was pay

16 some money and I would not have to deal with going to court or face arrest. For

17 these reasons, I immediately gave Ms. Harris my American Express credit card

18 number to pay the $250 Rincon claimed I owed.

19       7.    Ms. Harris told me that the payment would not be processed until

20 Monday morning, two days later, and that in the meantime she would send me by

21 e-mail a settlement agreement, which I would have to sign and return to her. I

22 never received the settlement agreement from her.

23       8.    It was not until immediately after we hung up and reflected on the

24 conversation that we realized that something did not add up. I called JC Penney

25 and GE Money Bank. Both companies confirmed that, as we remembered, there

26 had been no activity on our account since we closed it 12 years ago, and

27 that we owed nothing on that JC Penny credit card.

28

9.     We looked up Rincon on the Internet and found many complaints from other consumers who had experiences very similar to ours. Based on these reports, we concluded that Rincon was running some sort of scam. I immediately called American Express and explained to them what had just happened. American Express agreed to cancel the transaction and block the $250 payment from being charged to my account on Monday.

10.    On the morning of Monday, February 28, 2011, Beverly told me that she received a call from Ms. Harris. Ms. Harris told Beverly that the payment I had agreed to make had not gone through and she wanted to know why. Beverly said she explained to Ms. Harris that I had cancelled the transaction because we did not believe it was legitimate and that we had already verified that I did not owe any money on the JC Penny card as she had claimed. Beverly said she asked Ms. Harris to provide us with written proof of the debt, and Ms. Harris claimed she had already mailed us a letter with that information sometime in December 2010. Ms. Harris confirmed insisted that she had mailed it to our home address, but Beverly and I are certain that we never received that letter. Ms. Harris then told Beverly that if this debt was not cleared up immediately, I would be sued soon and the sheriff would be coming to our house to arrest me. Beverly told me that at that point, she told Ms. Harris that we believed her pitch to be a scam and demanded that she and her company stop contacting us and hung up the phone.

11.    In the following days, we received about three more calls from what appeared on our caller ID as a blocked number. Because Ms. Harris' calls to our home had also come from a blocked number, we ignored those subsequent calls.

12.    The stress of this Rincon encounter truly interfered with our lives. Beverly told me she felt anxiety every time the phone rang because she worried that it might be Rincon calling. This forced us to change our home phone number and subscribe to a service that allows us to screen calls from unknown numbers. While we are grateful that we were able to cancel the charges before Rincon

1   collected our money, the situation scared us into placing a security freeze on our

2   credit reports and changing our bank account and credit card numbers, all of which

3   was a huge inconvenience.

4        13.    We have not heard from Rincon again since we changed our phone

5   numbers. I was never arrested as Mr. Harris threatened, and we have not received

6   notice of any pending or ongoing lawsuits against me. We never received the

7   settlement agreement that Ms. Harris had promised to send to us by e-mail. I

8   believe that the threats, as well as Rincon's practice of contacting our friends about

9   an alleged lawsuit, were merely an intimidation tactic so that we would pay the

10   company.

11        14.    On February 28, 2011, we tried to file a complaint with the Florida

12   Attorney General, which referred us to the California Attorney General because

13   Rincon appears to be based in that state. The California Attorney General in turn

14   advised us to file our complaint with the Federal Trade Commission, which we did

15   that same day.

16        I declare under penalty of perjury that the foregoing statement is true and

17   correct. Executed on July _19_, 2011, in Weston, Florida.

18

19                                     _Brian Smith_

20                                     Brian Smith

21

22

23

24

25

26

27

28

Smith, Donna

## DECLARATION OF DONNA SMITH

I, Donna Smith, make the following statement:

1.    I am more than 18 years of age.  I reside in Hannover, Pennsylvania.

2.    I work for our local school district.  On or about August 5, 2010, the Superintendent's Executive Secretary contacted me and told me that a Candence Wright from "Process Services" called our main school district telephone switchboard.  The secretary told me that Candence had told her that I was being sued in court, and needed to call back right away.  Candence left a phone number.

3.    Our school district's executive secretary also sent me an email about the phone call.  **Attachment 1** is a true and correct copy of the executive secretary's email to me, dated August 5, 2010.  The email states that the caller had told our district superintendent's secretary that there was a criminal/civil case against me, and had told her the case number was 102101178.

4.    I had no idea what the case might have been about.  I called the telephone number Candence had left.  The first and second time I called I was told that their computer system was down, and they asked me to leave my contact information and someone would call me back.  I declined, because I thought it might be some kind of way to get more information out of me.

5.    The first time I called I was told no one named Candence Wright worked there, or had ever worked there.  I asked for the company name and address, and was told the company's mailing address was Union Management, attn: Allan Gates, 1191 Magnolia Avenue, Suite D-381, Corona, California 92879.

6.    I called the company a couple more times after that seeking information about this purported case.  On the third phone call, the representative told me a sheriff would be delivering a summons for the alleged lawsuit.  I told

1

**162**

1   them that was bunk.  The representative started yelling at me, telling me that I
2   wasn't a lawyer, and didn't know anything.  He then hung up on me.

3        7.    I obtained a copy of my credit report.  My credit report contained
4   inquiry from Pacific Management Recovery.  The credit report listed an inquiry on
5   April 22, 2010, from Pacific Management Recovery LL, 355 N. Sheridan Street,
6   Corona, California 92880.  The reason given on my credit report was listed as
7   "credit card." I had not applied for a credit card in April 2010, and have no idea
8   why this inquiry was made by Pacific Management Recovery.  **Attachment 2** is a
9   true and correct copy of the page of my Experian credit report that listed the
10   inquiry.

11        8.    On or about August 19, 2010, I wrote to Pacific Management
12   Recovery, LLC at 355 N. Sheridan Street, Corona, CA 92880.  I wrote that
13   divulging my information to a third party and misrepresenting a collection attempt
14   as a lawsuit are violations of the law.  I also requested validation of the debt.
15   **Attachment 3** is a true and correct copy of my August 19, 2010 letter to Pacific
16   Management Recovery.  Pacific Management Recovery never sent me the
17   validation I requested from them.

18        9.    On February 17, 2011, I filed an online complaint against the
19   company with the Federal Trade Commission.  I also filed a complaint with the
20   California Attorney General.

21       10.    I never received a copy of the summons the Pacific Management
22   representative threatened to send to me.  To my knowledge I have not been sued by
23   Pacific Management, and do believe that they are attempting to collect a valid debt.

24       I state under penalty of perjury that the foregoing statement is true and
25   correct. Executed on August _19_ , 2011, in Hanover, Pennsylvania.

26

27 
28                    Donna Smith

**Donna Smith - Phone Call**

From:      Judy Marsh
To:        Donna Smith
Date:      8/5/2010 2:44 PM
Subject:   Phone Call


Donna,

We received a phone call from Process Services, who wants you to call them.  The lady, Candence Wright, has indicated that there is a criminal/civil case against you.
Phone # 866-767-8814, Case #102101178.

She would not give any other details.  She said the phone number she has for you is discontinued.  When I asked her how she got the district's number, she said you listed the district as a contact.  She wanted to know if we had another number for you.  I said I would give you the message and you can call them.

That's all I know.


*Judy Marsh*
Secretary to the Superintendent
South Western School District
█████████████

Smith declaration Attachment 1

164



Prepared for: DONNA J SMITH
Date: June 14, 2011
Report number: 0297-1294-90

## Record of requests for your credit history

We make your credit history available to your current and prospective creditors and employers as allowed by law. Experian may list these inquiries for up to two years.

### Inquiries shared with others

The section below lists all of the companies that have requested your credit information as a result of an action you took, such as applying for credit or financing or as a result of a collection. The inquiries in this section are shared with companies that receive your credit history.

Examples of inquiries shared with others include:
- a real estate loan
- a home mortgage loan
- an auto loan
- an application for credit

**PACIFIC MANAGEMENT RECOVERY LL**
355 N SHERIDAN ST
CORONA CA 92880
No phone number available
Address identification number:
0037152781

**Date**
Apr 22, 2010
**Reason**
Credit card. This inquiry is scheduled to continue on record until May 2012.

**Smith declaration Attachment 2**

Pacific Management Recovery, LLC                         August 19, 2010
355 N. Sheridan St.
Corona, CA 92880


Dear Sirs:

On 8/5/10, I received a message from an executive secretary at my workplace, saying that
Process Services had called and that I needed to call Candence Wright back immediately.
She told the secretary that I was being sued in court. Case #102101178. Divulging
information to a third party and misrepresenting a collection attempt as a law suit are
violations of the law.

Additionally, according to the Fair Debt Collection Practices Act, you must send debt
validation of a debt within five days of initial contact. You have not done this. Please
send me this validation, including documents from the original creditor proving that I
owe this debt, and that your agency is authorized to collect this debt.

If unable to provide this validation, please contact the concerned credit bureaus and the
credit reporting agencies and remove the unauthorized hard inquiry you made to my
credit report (4/22/10). I also request that you remove my personal information from
your records. Please send me a written confirmation that you have complied with my
requests.

In addition, I see that you are based in California. Please send me a copy of your license
to pursue collections in the state of Pennsylvania.

Please only contact me by mail. I do not wish to receive calls at work or at home.

Sincerely,


Donna J. Smith


**Smith declaration Attachment 3**

Stump, Kimberly

## DECLARATION OF KIMBERLY STUMP

I, Kimberly Stump, make the following statement:

1.     I am more than 18 years of age.  I reside in Shady Spring, West Virginia.

2.     A man called me on my mobile phone on May 4, 2011, around 7:00 p.m., and told me that I was being served.  He refused to provide his name or the name of his employer, telling me that he could not provide me with any information because he was "just a server," which I took to mean that he serves people with notice of lawsuits.  He gave me a "case number," 106803372,  and a telephone number, 877-717-9946, which he said I should call right away.  The caller told me that if I did not call the number or that if I ignored his company's calls in the future, that I could be sued, arrested or that additional fees and penalties would be assessed against me.  The caller did not specify whether it would be his company or another entity that would take those actions against me.

3.     I immediately called the phone number the caller gave me.  The receptionist who answered the phone did not identify herself or her company.  Her only greeting when she answered the phone, then and on future occasions when I called, was the word "Corporate."  The receptionist transferred me to a woman who identified herself as Kelly Harris.  Ms. Harris told me she worked for Rincon Filing Services ("Rincon").

4.     Ms. Harris told me that her company was calling to collect on a balance I owed on an old HSBC credit card account.  I explained to Ms. Harris that although I had defaulted on my HSBC credit card debt, I had already settled that debt with a separate collections agency, Goldman Roth Acquisitions, in October or November of 2009.  At that time, I had an unpaid $915 credit card balance.  Goldman Roth had allowed me to settle the debt for $700, which I paid in two $350 installments.  I explained those details to Ms. Harris as well. **Attachment 1** is

1   a true and correct copy of my redacted bank statements showing the payments I
2   made to Goldman Roth Acquisitions in payment of the HSBC credit card balance.

3       5.      Ms. Harris told me that while she could see in my "file" that I had
4   made those two $350 payments, they appeared only as payments toward my
5   balance, but not as a settlement of my entire debt.  She said my file did not show
6   that my account was paid in full, and that after those payments I remained owing a
7   $215 balance.  Ms. Harris told me that $549 had accrued onto that balance, and that
8   I now owed a total of $764.  My immediate reaction was thinking that the amount
9   of those interest charges sounded outrageous.

10      6.      Ms. Harris then told me that I was being sued as a result of this debt.
11  She did not clarify whether she meant that a lawsuit had already been filed against
12  me or whether one would be filed in the near future, but my impression based on
13  what she said was that a lawsuit was already in progress.

14      7.      I asked Ms. Harris what I could do to stop the lawsuit, and she said I
15  could settle the entire debt right then and there for $369.60.  She said that settlement
16  offer was valid only if I accepted it immediately, and that I would be taken to court
17  if I did not agree to the settlement.  Ms. Harris also told me that if at any time I was
18  able to provide her with proof that I had already settled my debt, she would no
19  longer charge my account or refund to me any payments I had already made.  Ms.
20  Harris was offering to settle this claim for $369.60 rather than the $764 she claimed
21  I owed, so because I did not want to be sued or be arrested, I thought it best just to
22  pay the amount to avoid any legal trouble.  I gave my debit card information to Ms.
23  Harris and authorized a $369.60 withdrawal from my checking account.

24      8.      Shortly after our conversation, Ms. Harris emailed me a settlement
25  offer form, which stated that the settlement would be null and void unless I signed
26  the form and returned it to Rincon.  **Attachment 2** is a true and correct copy of the
27  settlement offer form that Ms. Harris emailed to me.

28

9.      Before I signed the settlement offer form I talked to several of my friends and relatives, who told me that Rincon's use of threats to make me pay immediately sounded suspicious and warned me that this whole situation could be a scam.  This caused me then to look up "Rincon Filing Services" on google.com. That search led me to a site called www.ripoffreport.com, where I found numerous complaints written by other debtors who had dealt with the company and by former Rincon employees.  The complaints I read generally stated that the company had used threats of arrest and litigation to obtain payments from individuals to settle debts that, in many cases, they apparently did not owe or no longer owed.

10.      That same evening, about an hour after I gave  Ms. Harris my payment information, I called her back and told her that I had changed my mind and that I no longer wished to settle the credit card debt with her.  I also told Ms. Harris that if her company planned to sue me that I would take my chances in court.  Ms. Harris told me that would be fine, but asked that I call her in the morning to remind her of my request because the office that handles cancellations was already closed for the day.

11.      I called Ms. Harris again the next morning, on May 5, 2011.  I again told her that I no longer wanted to settle and I asked her not to bill my debit card. Over the course of the conversation, I asked Ms. Harris three times not to charge my debit card, and each time she assured me that she would not.  Her exact words, as I remember them, were that she would handle the matter personally and see to it that no charges came out of my account.  I asked Ms. Harris to send me a written confirmation that I had cancelled the payment.  She told me that she could not do that, but told me not to worry because the cancellation had already "been taken care of."

12.      I then asked Ms. Harris to send me a written notice validating my debt. Ms. Harris told me she could not do that because Rincon was a filing company, not a debt collection agency.  I also asked Ms. Harris when I would be served, and I

1 asked her to provide the name and bar number of the attorney who would be
2 handling the suit against me.  Ms. Harris told me she could not provide that
3 information because Rincon had not yet retained a lawyer licensed in West Virginia
4 to handle my case, but that I would probably be served in about 40 hours.

5       13.   To date, I have not been served with any legal documents or otherwise
6 notified of any lawsuit related to this debt.

7       14.   Despite Ms. Harris' promises not to bill my card for the $369.60
8 settlement amount, Rincon charged my bank account that amount.  **Attachment 3** is
9 true and correct copy of my redacted bank statement showing the $369.60 charge
10 Rincon made to my checking account.

11       15.   When I saw the charge to my checking account, I called Rincon to
12 speak with Ms. Harris about this.  Ms. Harris acted as if she had never spoken to me
13 before that day.  I asked Ms. Harris several times why she had billed my account
14 after assuring me that the payment had been cancelled, but she simply aid that she
15 was not sure what I was referring to.  When I threatened to file complaints with the
16 Federal Trade Commission and the West Virginia Attorney General, Ms. Harris
17 hung up on me.

18       16.   On May 20, 2011, I sent my bank a form complaint disputing my
19 transaction with Rincon.  **Attachment 4** is a true and correct copy of the redacted
20 dispute form I sent to my bank.

21       17.   On June 3, 2011, my bank responded with a letter telling me that it
22 could not credit my account for the $369.90 because the bank had determined that I
23 had authorized the charge.  My bank also advised me to contact Rincon and ask for
24 information about its cancellation policy.  **Attachment 5** is a true and correct copy
25 of that letter.

26       18.   After Rincon charged my debit card, I filed complaints with the
27 Federal Trade Commission and with the West Virginia Attorney General.
28 **Attachment 6** is a true and correct copy of the complaint I filed with the West

1  Virginia Attorney General.  On or around May 26, 2011, I received two letters from

2  Dennis Cunningham, a mediator who works for the West Virginia Attorney

3  General's office.  One letter advised me to dispute Rincon's charges with my bank.

4  The second letter informed me that the mediator would attempt to help me resolve

5  my dispute with Rincon.  **Attachment 7** are true and correct copies of Mr.

6  Cunningham's letters.

7       19.     On June 3, 2011, Mr. Cunningham sent me a third letter and forwarded

8  to me a copy of a letter he received from Rincon in response to my complaint.

9  **Attachment 8** is a true and correct copy of Mr. Cunningham's third letter and

10 Rincon's response to my complaint.

11      20.     Sometime during the second week of June 2011 I obtained from

12 Goldman Roth Acquisitions a letter confirming that I did settle my entire $915 debt

13 in 2009 by making the two $350 payments, and that I my balance on that account is

14 now zero.  **Attachment 9** is a true and correct copy of that confirmation letter.

15      21.     On or about June 14, 2011, I faxed that confirmation letter to Rincon

16 as proof that I did not owe the debt Ms. Harris had attempted to collect from me.

17 That same day, I also faxed a copy of that letter to the West Virginia Attorney

18 General's office.

19      22.     On June 23, 2011, I received correspondence from Rincon informing

20 me that I can expect to receive a refund of the money it had charged me.

21 **Attachment 10** is a true and correct copy of that correspondence.

22      23.     My experience with Rincon has been terrible.  I feel that the company

23

24

25

26

27

28

1  scared and intimidated me into paying it money that I did not owe on a debt that I
2  had already settled.

3      I declare under penalty of perjury that the foregoing statement is true and
4  correct.  Executed on 7 - 19 , 2011 at Shady Spring, West Virginia.

5

6

7                                    Kimberly A Stump
8                                    Kimberly Stump

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Date 11/13/09          Page    2

KIMBERLY A STUMP
ERIC JASON STUMP
████████
SHADY SPRING WV ████████

CITY GOLD CHECKING          ████████    (Continued)

-------------------------   Activity in Date Order   -------------------------
Date     Description               Check#          Amount          Balance

██████████████████████████████████████████████████

11/02 WITHDRAWAL                                    350.00-        ████████
      ACH TRANS  GOLDMAN ROTH ASS
      000000100900

██████████████████████████████████████████████████

**173     Stump declaration Attachment 1**

Date 12/14/09          Page      2

KIMBERLY A STUMP
ERIC JASON STUMP
SHADY SPRING WV ███████

CITY GOLD CHECKING            ████████    (Continued)

---------------------------   Activity in Date Order   ---------------------------
Date   Description                      Check#            Amount            Balance

11/23 WITHDRAWAL                                         350.00-
        ACH TRANS  GOLDMAN ROTH ASS
        000000100900

**174      Stump declaration Attachment 1**

# Rincon Filing
## 1191 Magnolia Ave  Ste D-396
## Corona, CA 92879
### Tel:  877-401-6202  Fax: 951-272-1727

***Personal and Confidential***

URGENT:  SIGN AND RETURN TO Rincon Filing

May 04, 2011

**KIMBERLY STUMP**

████████████

SHADY SPRINGS, WV ███████

| | |
|---|---|
| **Original Creditor:** | HSBC Household |
| **Original Account #:** | ████████████ |
| **File Number:** | HHI1068-03372 |

## OFFER OF SETTLEMENT

**This office has been retained to collect an outstanding balance owed on the above referenced account.  Any information obtained will be used for that purpose.**

Our client is willing to settle any known or unknown obligations in this matter with respect to the above mentioned account for the sum of $369.90, if paid by 05/16/2011 and in accordance with the terms which are stated here.  **Upon receipt of certified funds and your authorized signature, the file will be closed.**

We shall notify our client that the obligation has been paid and satisfied and you will receive the proper documentation needed to notify the credit bureaus and update the credit account to a PAID IN FULL status.

Sincerely,

Rincon Filing
Administrative Department

RINCON FILING IS WILLING TO SETTLE THE REFERENCED ACCOUNT, ON YOUR BEHALF, FOR THE AMOUNT THAT YOU HAVE AGREED UPON.  YOUR AUTHORIZED SIGNATURE IS REQUIRED TO UPHOLD ANY SETTLEMENT AGREEMENT BETWEEN YOU AND RINCON FILING.  FAILURE TO DO SO WILL RENDER THIS SETTLEMENT OFFER NULL AND VOID.

**AUTHORIZED SIGNATURE:** _____

** PLEASE MAIL OR FAX THIS PAGE OF YOUR DOCUMENT TO RINCON FILING **

*Federal law requires we notify you that this communication is from a debt collector in an attempt to collect a debt and any information obtained will be used for that purpose.*

175

Stump declaration Attachment 2

TY NATIONAL BANK

ACCOUNT NO.   ███████

KIMBERLY A STUMP
ERIC JASON STUMP
PO BOX ████
SHADY SPRING WV ████████

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

PREVIOUS STATEMENT BALANCE
CHECKS AND CHARGES
DEPOSITS AND CREDITS                    **
BALANCE THIS STATEMENT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| DATE | CHECK# | AMOUNT | BALANCE | TC |
|------|--------|--------|---------|----|
| 5/18/11 | | 369.90 | ████ | 229 DBT CRD 2040 05/17/11 00010094 |
| | | | | RINCON MANAGEMENT SERV |

**Stump declaration Attachment 3**

# City NATIONAL BANK

## CNB - Debit Card Dispute
### Point of Sale Request Form

## General Information:

| | | | |
|---|---|---|---|
| Date: | **05/20/2011** | Bank Account Number: | ▮▮▮▮▮ |
| Institution Name: | **City National Bank** | Account Type: | **CHECKING** |
| Institution Acronym: | **CNWV** | Customer Name: | **KIMBERLY A STUMP** |
| Branch: | **Harper Road** | Address: | ▮▮▮▮▮ |
| Address: | **1723 Harper Road** | Address: | **SHADY SPRING WV** ▮▮▮ |
| Address: | **Beckley, WV 25801** | Telephone # Daytime: | ▮▮▮▮▮ |
| Merchant Name: | **RINCON MANAGEMENT SERVICE** | Alt/Cell: | **NONE** |
| Transaction Date: | **05/18/2011** | Card Number: | ▮▮▮▮▮ |
| Dollar Amount $: | **369.90** | | |

## I am disputing the above charge due to following reason:

I have engaged in the transaction listed & have contacted the merchant in an attempt to resolve the dispute.
The delivery day was to be **05/16/2011**
I canceled the order on **05/04/2011** & was not credited.
The delivery day was to be **05/16/2011**
I canceled the order on **05/04/2011** & was not credited.

## Specific details of the dispute :

**AUTHORIZED A SETTLEMENT OF 369.90 ON MAY 4,2011 WITH KELLY HARRIS. ABOUT AN HOUR LATER I CHANGED MY MIND AND TOLD MS HARRIS I WANTED TO CANCEL THE TRANSCATION  SHE TOLD ME TO CALL HER ON MAY 5 2011 TO REMIND HER TO CANCEL IT I DID AND SHE ASSURED ME IT WAS CANCELLED BUT ON MAY 18TH IT WAS DEBITED FROM MY ACCT**

Cardholder Signature: *Kimberly A Stump*          Date: 5-20-11

Once signed, fax to 304-769-1190.
A copy of the checking account statement (with the purchase in question circled) and any correspondence is REQUIRED.

Completed By : Norris, Pamela D.
Stump declaration Attachment 4

A copy of my shipping receipt is enclosed if applicable.

☺ I contracted with the merchant for services (described below) to be provided on [＿＿＿＿＿] 📅
I have not received them.
I have contacted the merchant in order to resolve the dispute to no avail.

☺ The charge listed was paid previously by another method. I'm enclosing proof.
I have tried to resolve this with the merchant.

☺ I am disputing a guaranteed reservation service. I have explained the details below.
Date of cancellation [＿＿＿＿] 📅
(If available) at [＿＿＿] [Select One] 📅
The cancellation number is [＿＿＿＿＿＿＿＿＿]

☺ I have not received a credit to my account for the transaction listed.
I have enclosed copy of the credit receipt issued.

☺ The charge listed was a single transaction but has posted [＿＿＿] times to my account.

**Please provide specific details of your dispute below :**

✓ on May 4th

I authorized a settlement of 369.90 with kelly Harris. About an hour later I changed my mind and told Mrs Harris I wanted to cancel the transaction. She told me to call her on May 5th to

✓ remind her to cancel it I did and she assured me it was cancelled.

☑ I have contacted the merchant in an attempt to resolve the dispute.
*(This must be completed if the card has NOT been reported lost/stolen.)*

I contacted the merchant on [May 17] 📅
and spoke with [Kelly Harris      877 717 9946   ext 233]
Their response was

After the transaction was showing a withdraw in the amount of 369.90 on may 17 I called Mrs Harris and asked her why that came out of my account and her response was she didn't speak to me about cancelling the debt. Even

Branch employee: [Norris, Pamela D.]            [CONTINUE]

though I called her on 2 different occasions asking for it to be cancelled and also asked for something in writing saying my account would not be charged.

Stump declaration Attachment 4
http://intranet/APPS/Debit%20Card%20Dispute/form_POS_Customer_Complaint.asp          05/20/2011



# City
## NATIONAL BANK

June 3, 2011

Kimberly Stump
PO Box ▮▮▮
Shady Springs, WV ▮▮▮▮▮

Re:    Checking Account No: XXXXXX▮▮▮

Dear Ms. Stump:

Thank you for your recent query regarding a debit card transaction, which posted to your account for a total of $369.90.

As a result of the review process, and in accordance with the Federal Regulation "E", City National Bank is not able to credit your account the disputed amount for the following reason:

> Our records show this to be an authorized charge to your debit card. You will need to contact the merchant to get information on their cancelation policy.

Please know that you have the right to request, in writing, copies of the documents used in our research and determination of this matter.

If you have further questions, please contact your local City National Bank branch or the address below.

City National Bank
PO Box 7152
Attn: ATM/Debit Card Department
Cross Lanes, WV 25356

cc: File



**STATE OF WEST VIRGINIA**
OFFICE OF THE ATTORNEY GENERAL
DARRELL V. McGRAW, JR.
CONSUMER PROTECTION DIVISION
1-800-368-8808 **or** 304-558-8986



http://www.wvago.gov

E-Mail: consumer@wvago.gov

## CONSUMER COMPLAINT

**1. PARTY COMPLAINING**

☐ Mr.  ☐ Mrs.  ☐ Ms.

Name: _Kimberly Stump_

Mailing Address: _P. O. Rd_ ▮▮▮

City: _Charley Springs_  State: _WV_

County: _____  Zip Code: ▮▮▮▮

Home Telephone: _____

Work Telephone: _____

Cell Telephone: ▮▮▮▮▮▮▮▮▮

Email: _____

Best time to contact me: _AM_

**2. COMPLAINT AGAINST**

Business Name: _Rincon_

Address: _1191 Magnolia Ave_ _Suite D396_

City: _Corona_   State: _Ca_

County: _____  Zip Code: _92879_

Telephone: _877-717-9946_

Name of person you dealt with: _____

Title: _____

3. Date of purchase or transaction: _May 2011_

4. Product or service involved: _Collection Agency_

5. Price and terms of payment: _$ 369.90_

6. Type of payment:
   *Please check*
   *all that apply*

☐ Cash  ☐ Loan  ☐ Credit Card  ☑ Wire Transfer
☐ Check  ☐ Installment  ☐ Debit Card  ☐ Western Union
☐ Other  ☐ PayPal

7. A. If your purchase was **financed**, please provide the name, address, and telephone number of the **finance company**:

_____

_____

B. If your complaint concerns **product defects or repairs**, please provide the name, address, and telephone number of the **manufacturer**:

_____

_____

C. If your complaint is against a **debt collector**, please provide the name, address, and telephone number of the **original creditor**:

_____

_____

PLEASE CONTINUE TO THE NEXT PAGE

**180**    **Stump declaration Attachment 6**

8.  First contact between you and individual/business:

☐ Person came to my home                             ☐ Telephoned the business/individual
☐ Went to place of business                          ☑ Received telephone call from business/individual
☐ Received information in the mail                    ☐ Email
☐ Responded to a radio – TV – printed advertisement  ☐ Internet

Name and address of publication – TV – radio station where offer was advertised: _____

_____

Have you contacted the publication, TV or radio station? . . . . . . . . . . . ☐ Yes        ☐ No

9.  Where did the purchase/transaction take place?

☐ At my home                    ☐ At the place of business
☐ Over the telephone            ☐ By mail
☐ There was no transaction      ☐ Internet
☐ Wire Transfer                 ☐ Other _____

10. Have you contacted the business about your complaint? . . . . . . . . . . . ☑ Yes        ☐ No

11. Have you filed this complaint with any other agency or organization? . . . ☐ Yes        ☑ No

If Yes - Identify organization: _____

What action was taken? _____

12. Describe any legal action you have taken: _____

13. Did you sign a contract? . . . . . . . . . . . . . . . . . . . . ☐ Yes        ☐ No

14. Did you receive a copy of the contract? . . . . . . . ☐ Yes        ☐ No

15. Did you receive a 3-Day Right to Cancel? . . . . . ☐ Yes        ☐ No

16. Is there a warranty involved? . . . . . . . . . . . . . . . ☐ Yes        ☐ No

**Attach copies of all documents – front and back – related to the transaction.**

**If statements or promises were not in writing, describe them in Question 17.**

**If you need additional space to tell what happened,**

**please continue on a separate page and attach it to your complaint.**

_____    PLEASE CONTINUE TO THE NEXT PAGE    _____

**181**        **Stump declaration Attachment 6**

17. Please describe your complaint in detail: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

18. How do you want your complaint resolved? _____

_____

_____

The information you provide will be used in efforts to resolve your problem and may be shared with the party complained against.  It may also be used to enforce applicable state laws.

I hereby authorize any party to whom the Attorney General directs this complaint to release any and all information about this matter, including account information, to the Attorney General's Office.

I certify that all information on this form is true and accurate to the best of my knowledge and belief, and that I have the legal authority to submit this claim.

SIGNATURE *(Required)* *Kimberly A Stump*          DATE  5-19-11

*Optional:*

| AGE: _____          | MARITAL STATUS:              | RACE:                                    |
|----------------------|------------------------------|------------------------------------------|
| ☐ Male   ☐ Female    | ☐ Married    ☐ Single        | ☐ Caucasian    ☐ African American        |
|                      | ☐ Divorced   ☐ Widowed       | ☐ Hispanic     ☐ Other: _____         |

Return this form and copies of your papers to:          Office of the Attorney General
Consumer Protection Division
PO Box 1789
Charleston, WV  25326-1789

Revised: March 27, 2007

**182          Stump declaration Attachment 6**

I was contacted on May 4th 2011 by someone saying I was being served and if I wasn't home or if I avoided them that I could be arrested and could face fines and penalties. He told me that he couldn't give any information as to why, so he gave me a phone number to call along with a case number. I called the number and was put in touch with Kelly Harris. She then proceeded to tell me that I was being sued for a debt that I owed with HSBC. In Oct. - Nov 2009 I was contacted by a collection agency and they offered a settlement if I paid $700.00, which I made in two payments. I told Kelly Harris that the above debt was settled and she told me that the collection agency didn't mark it as settled and it looked as if I just made a payment. That left a balance of $215.00 in which interest on that grew to $549.00. I was intimidated by this so I gave her my credit card information to settle the above debt for $369.90 and it would be taken out of my account on May 16th 2011. She also said that I needed to sign and return the settlement offer. Shortly after we hung up,

I called Kelly Harris back around 1 hour later and asked her if I could cancel the payment and take my chances in court. She then said that was fine, but I needed to call her tomorrow and remind her because the office that handles that was closed. I called the next day and spoke to Kelly Harris again to remind her of my decision to cancel the payment. She assured me that she cancelled it and no money would be taken out of my account. At that time I asked her if she could send me something in writing verifying that. She refused. Then I asked for the full name of the attorney and license number in the state bar. She then explained that she didn't know who would handle my case because someone in West Virginia would be assigned to my case. I then asked how long it would take before action was taken on me and she told me 40 hours, that was the end of our conversation till May 17th 2011. I checked my account on May 17th and noticed that a withdrawl for $369.90 was coming out of my account from Ricon Management. I called Kelly Harris again and asked her why that money was being taken

out of my account when I told her not to
and I didn't sign the paper that completed
the settlement. She then acted like she had
no clue who I was and wouldn't give
any type of explanation. I was very upset
at this point and she told me she was
going to terminate my call after that
I told her I was going to file a complaint
with the FTC and the attorney generals
office and then she hung up on me. I already
filed a complaint with the FTC so I called
and updated them on what happened the next
day I filed a complaint with the attorney
general. I have researched this company
on the internet and their are numerous
complaints from April 2011 to May 2011.
These people terrify you into paying
by threatning you.

Rincon # 877-717-9946
Kelly Harris ext. 233
Case # 106803372
fax# 951-272-1727

Stump declaration Attachment 6

**DARRELL V. McGRAW, JR.**
**ATTORNEY GENERAL**

**PHYSICAL ADDRESS:**
812 Quarrier St.
Charleston, WV 25301

**MAILING ADDRESS:**
P. O. Box 1789
Charleston, WV 25326-1789

E-Mail: consumer@wvago.gov
http://www.wvago.gov



**STATE OF WEST VIRGINIA**
**OFFICE OF THE ATTORNEY GENERAL**

May 26, 2011

**Consumer Protection**
**and Antitrust Division**
**(304) 558-8986**

**Preneed Funeral Services**
**(304) 558-8986**

**Consumer Hotline**
**1-800-368-8808**

**FAX: (304) 558-0184**

Ms. Kimberly Stump
P. O. Box ███
Shady Spring, WV ███

     Re:  Rincon Filing

Dear Ms. Stump:

    Our office has received your complaint and it has been assigned to me.  I will contact the business on your behalf and attempt to mediate a successful solution.  I will notify you if further information is needed.

               Very truly yours,

               Dennis P. Cunningham
               Mediator
               Consumer Protection and
                 Antitrust Division

ijs

**Stump declaration Attachment 7**



**DARRELL V. McGRAW, JR.**
**ATTORNEY GENERAL**

PHYSICAL ADDRESS:
812 Quarrier St.
Charleston, WV 25301

MAILING ADDRESS:
P. O. Box 1789
Charleston, WV 25326-1789

E-Mail: consumer@wvago.gov
http://www.wvago.gov

**STATE OF WEST VIRGINIA**
**OFFICE OF THE ATTORNEY GENERAL**

Consumer Protection
and Antitrust Division
(304) 558-8986

Preneed Funeral Services
(304) 558-8986

Consumer Hotline
1-800-368-8808

May 26, 2011

Kimberly Stump
P. O. Box ███
Shady Spring, WV ███

    Re:  Rincon Filing

Dear Ms. Stump:

      This is to acknowledge receipt of your complaint against the above-named business.

    **Because you paid for goods or services by debit card or by other electronic means (for example, an electronic check), you may have a right to dispute these charges with your financial institution. You can only dispute unauthorized charges or erroneous charges. You cannot dispute charges regarding the quality of goods and services, or charges for which you did not receive the goods or services.**

      To dispute a charge, you must notify your financial institution within 60 days of the date the error appears on your periodic statement or terminal receipt. Your notice should be in writing and sent by certified mail, return receipt requested, so that you will have proof that the financial institution received the letter. Keep a copy of the letter you sent for your records. I have also enclosed a brochure that discusses how to dispute electronic payments.

                    Sincerely,

                    Dennis P. Cunningham
                    Mediator
                    Consumer Protection and
                      Antitrust Division

ljs
Enclosure



**DARRELL V. McGRAW, JR.**
**ATTORNEY GENERAL**

PHYSICAL ADDRESS:
812 Quarrier St.
Charleston, WV 25301

MAILING ADDRESS:
P. O. Box 1789
Charleston, WV 25326-1789

E-Mail: consumer@wvago.gov
http://www.wvago.gov

**STATE OF WEST VIRGINIA**
**OFFICE OF THE ATTORNEY GENERAL**

June 3, 2011

Consumer Protection
and Antitrust Division
(304) 558-8986

Preneed Funeral Services
(304) 558-8986

Consumer Hotline
1-800-368-8808

FAX: (304) 558-0184

Ms. Kimberly Stump
P. O. Box ███
Shady Spring, WV ████

     Re:  Rincon Filing

Dear Ms. Stump:

     Enclosed please find a response sent to our office from the above-named business that we contacted in an attempt to resolve your consumer complaint.

     Very truly yours,

Dennis P. Cunningham
Mediator
Consumer Protection and
  Antitrust Division

ijs
Enclosure

**Stump declaration Attachment 8**

# RINCON FILING

1191 Magnolia Ave Ste D-396
Corona, Ca 92879
Ph (951)547-2049 Fax (951) 272-1727

*Personal and Confidential*

June 2, 2011

State of West Virginia Office of the Attorney General
Consumer Protection – Dennis Cunningham
P.O. Box 1789
Charleston, WV 25326

**Re: Kimberly Stump**

Dear Dennis Cunningham,

We received correspondence from your offices dated May 26, 2011 in regards to the individual listed above. After reviewing the file we've confirmed that Ms. Kimberly Stump does have a file with our office in regards to the debt she incurred with HSBC. We do see that Ms. Stump called our office offering settlement and made a voluntary payment which was applied to her account, which now shows as "paid in full." The payment she made was in fact due and would remain due if left unpaid. On May 4, 2011 a letter (included with complaint) was emailed to ███████@███.com and mailed to the address she provided. We don't show any calls or written communication reflecting Ms. Stump's request for cancellation of payment.

If Ms. Stump can supply us with a "paid in full" letter or proof from the company, she claims to have paid for this debt, we will gladly reimburse her. We can assure you that Rincon Filing in no way takes part in unlawful practices. Our company complies with all FDCPA rules and regulations. It is our goal to satisfy our clients and resolve misunderstandings like this as quickly and efficiently as possible.

If there are any further issues regarding this matter please feel free to call my office directly.

Respectfully,

Mr. Richard McKinley
Director



**Goldman, Roth Acquisitions**
"Putting the consumer first"

KIMBERLY STUMP
PO BOX ■■■■
SHADY SPRING, WV ■■■■

Date: June 8th, 2011

Status: PAID

File: # ■■■■■■

RE: HSBC
ACCT# ■■■■■■■■■

Balance $0

Dear Kimberly,

**Goldman, Roth Acquisitions LLC,** has received your payment on the above referenced account in the amount of $700.00 11/30/2009. This account will be considered paid in full upon non-reversal of funds. Please allow 60 days from payment date for this process.

**Your account is considered paid in full and will be reported to the major credit reporting agencies.**

If you have any questions relative to the above referenced account, please do not hesitate to call this office at 1-877-495-8932.

**Federal law requires we notify you this is an attempt to collect a debt and any information obtained will be used for that purpose.**

Sincerely,

David Russo

455 Commerce Dr Suite 7 Amherst, New York 14228
www.goldmanroth.com
1-877-495-8932

**Stump declaration Attachment 9**