1  MARICELA SEGURA, CA Bar No. 225999
2  RAYMOND E. MCKOWN, CA Bar No. 150975
   e-mail: msegura@ftc.gov and rmckown@ftc.gov
3  FEDERAL TRADE COMMISSION
   10877 Wilshire Blvd., Suite 700
4  Los Angeles, CA 90024
   Telephone: (310) 824-4343
   Facsimile:  (310) 824-4380
5
   Attorneys for Plaintiff
6  FEDERAL TRADE COMMISSION

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>            Plaintiff,<br><br>     v.<br><br>RINCON MANAGEMENT SERVICES, LLC, a California limited liability company, also d/b/a "Rincon Debt Management," "Rincon Filing Services," and "Pacific Management Recovery"; PRIME WEST MANAGEMENT RECOVERY, LLC, a Delaware limited liability company; UNION MANAGEMENT SERVICES, LLC, a California limited liability company, also d/b/a "Union Filing Services"; NATIONAL FILING SERVICES, LLC, a California limited liability company; CITY INVESTMENT SERVICES, LLC, a California limited liability company; GLOBAL FILING SERVICES, LLC, a California limited liability company; PACIFIC MANAGEMENT RECOVERY, LLC, a Delaware limited liability company; JASON R. BEGLEY, an individual; and WAYNE W. LUNSFORD, an individual,<br><br>            Defendants. | Case no. EDCV 11-01623 VAP (SPx)<br><br>SECOND DECLARATION OF FTC INVESTIGATOR BRUCE GALE IN SUPPORT OF THE FTC'S APPLICATION FOR PRELIMINARY INJUNCTION AND APPOINTMENT OF PERMANENT RECEIVER<br><br>        <u>OSC Hearing:</u><br>Date: Monday, November 7, 2011<br>Time: 2:00 p.m.<br>Place: U.S. Courthouse, courtroom 2<br>3470 Twelfth Street, Riverside, CA 92501 |

# DECLARATION OF BRUCE GALE

1. My name is Bruce Gale. I am an investigator with the Federal Trade Commission ("FTC"). I work in the Western Region, Los Angeles office. The following statements are within my personal knowledge and if called upon as a witness I could and would competently testify thereto.

2. On October 13, 2011, pursuant to the temporary restraining order ("TRO") entered in this action, FTC staff engaged in immediate access of the following business premises belonging to Defendants: 980 Montecito Dr., Suite 205, Corona, CA 92979; 495 E. Rincon St., Suites 201 and 204, Corona, CA 92879; 268 N. Lincoln Ave., Suite #9, Corona, CA 92882; and 109 N. Maple St., Suite C, Corona, CA 92879. The following is a description of 495 E. Rincon St., Suites 201, 204 and 150, and 109 N. Maple St., Suite C, and some of the evidence we found at those locations.

## 495 E. RINCON ST., SUITES 201, 204 & 150, CORONA, CA 92879

3. I and other FTC staff entered the office suite at this location upon permission by receiver, Richard Weissman's agent ("Receiver"). Once we entered, we met a man named John Cook ("Cook"), who identified himself as the manager of this location. Cook informed us that in addition to Suites 201, 204A and 204B, that Rincon also occupied suite 150 in that building. Cook had an office in suite 201, as well as suite 150. **Attachment 1** is a true and correct copy of the maps of the office suites we entered at 495 E. Rincon St. **Attachment 2** are true and correct copies of photographs of two of the rooms–suite 204A and suite 150 room A–as an example of the type of office we entered.

4. Suite 201 contained two main rooms, noted in maps #1 and #2 of suite 201 in Attachment 1. Cook's office is a smaller room noted as C on the map #2 of suite 201. *See* Att. 1 at p. 9. Cook's office contained documents with his name on it, as well as pictures of him on the walls and desk. Suite 204 was the larger than suite 201. When we entered the second floor offices at 495 E. Rincon

1

there appeared to be over 100 employees present between suites 201 and 204. It was difficult to get a count because many employees had left by the time the FTC entered the premises. Each desk had a computer terminal and a telephone, which appeared to be used by collectors because we found collection scripts and other collection instructions on the desks. The computer terminals had a software program up that contained fields which included contact information for a person, and other fields. The FTC found documents describing the collection software that is used, which is called simplecollect. A description of this software is submitted as attachment 6 to the declaration of Ann Stahl.

5. After Cook informed us that the company also occupied suite 150 below, we entered that suite. By the time FTC staff entered, many of the employees had left that office as well. Suite 150 was quite large and contained cubicle partitions separating each computer and telephone. Suite 150 contained three discrete areas marked A, B, and C on the map. Not all of the cubicles in suite 150 had documents on the desks, and a number of them appeared to be unused. Approximately 34 of the desks appeared to have had someone working at them because there were documents, such as collections scripts and information. Cook had an office in suite 150 as well, and it is marked as C-1 on the map. We knew this was Cook's office because his personal mail was on the desk as well as pictures of him.

6. **Scripts and collector instructions**: As discussed in the declaration of Ann Stahl, we found an "Employee Reference Guide" ("Employee Guide") in a drawer of Cook's desk in suite 201A. Ms. Stahl compared that Employee Guide with the Employee Guide found at the business address at 980 Montecito and found they were substantially similar. I too reviewed the Employee Reference Guide, and found that some of the scripts and rebuttals contained in that guide were similar to those submitted as Attachment 1 to the Declaration of former collector Russell Delbridge.

7. I and other FTC staff also found copies of some of the scripts and variations of the scripts contained in the Employee Guide on individual collector's desks. We found copies of the job standard talk off, the home standard talk off, the Spanish standard talk off, the official talk off, and the Jim Lewis closing script in both Spanish and English, on desks in suites 201, 204, on desks and tacked to the cubicle walls in suite 150. **Attachment 3** are true and correct copies of an examples of these scripts, and other documents found on collectors' desks in suites 201 and 204. Attachment 3 also includes a Spanish version of the home standard talk off "by Wayne."

8. While many of the scripts matched some of the scripts in the Employee Guide, we also found scripts with minor variations and handwritten notes by collectors, which also served as scripts. **Attachment 4** is a true and correct copy of a script and handwritten notes found on a collector's desk in suite 204B. Attachment 4 includes a written out Spanish script as well as a home standard talk off script with some handwritten rebuttals. **Attachment 5** is a true and correct copy of a photograph showing the home standard talk off and the job standard talk off tacked to two cubicles in suite 150 rooms marked A and B. We found many copies of these scripts in the cubicles in suite 150 in rooms marked A and B.

9. Some of the desks also contained the rebuttal sheets that were in the Employee Reference Guide submitted as Attachment 3 to Stahl's declaration. We found copies of the job rebuttals, sto rebuttals, closers rebuttals, and hardship rebuttals on desks in suites 201, 204, and 150. **Attachment 6** are true and correct copies of examples of the rebuttals we found. The rebuttals in Attachment 6 are from collectors' desks in suites 204 and 150. Also at this location, I saw a few company quizzes on collector's desks. These quizzes appeared to test collectors on Defendants' collections process and were similar to the quiz submitted as Attachment 35 to the declaration of Ann Stahl.

10. **Collections office rankings and collector rankings.** I have read the declaration of former collector Russell Delbridge submitted in support of the FTC's application for a temporary restraining order. Similar to what Delbridge stated in his declaration, the FTC found a sheet of paper ranking the various collections offices on the wall just across from the office of John Cook in suite 150. Also on that wall were rankings of Defendants' collectors, as well as a shorter list of the top 10 collectors who apparently collected debt under various trade names. The rankings list the amount brought in by each collector. **Attachment 7** are true and correct copies of collection office rankings and the two redacted collector rankings from the wall across from Cook's office in suite 150. The collector ranking sheet announces that "HH Spiff Money Business" company shirts are coming soon.

### 109 N. MAPLE ST., SUITE C, CORONA, CA 92880

11. On October 13, 2011, FTC entered Defendants' business premises at 109 N. Maple St., Suite C with permission from the Receiver. After the FTC entered, FTC staff created a map of the office suite. **Attachment 8** is a true and correct copy of the map of Defendants' office suite at 109 N. Maple St., Suite C, Corona, CA 92880. Each separate area or room in the suite was assigned a different letter, and each desk, cabinet, or shelf was assigned a sub-number. Similar to the suites at 495 E. Rincon, the collectors at this location sat at a desk with a computer terminal and a telephone for each collector. **Attachment 9** is a true and correct photograph of room C where it appeared most of the collectors were located.

12. **On site manager's desk and documents.** The manager at this location was named Barbara ("Barb") O'Neill. I am informed that when the FTC entered this location Ms. O'Neill was talking to the Receiver's representative. Ms. O'Neill's desk is marked D on Attachment 8. This office contained documents directed to Ms. O'Neill. It was also the only office that contained

4

employee W-9 forms, and other applicant information. On the desk in Ms. O'Neill's office marked D-1, the FTC found a print out of a document from the internet explaining the Fair Debt Collection Practices Act and prohibited conduct. It was similar to the type of notice that the FTC offers on its website to explain FDCPA requirements and prohibited conduct.

13. **Scripts and collector instructions**. From the documents we found, this office housed initial collectors ("dialers") and the second-level collectors ("closers"). Numerous scripts and rebuttals were found loose on the desks and in binders that matched some of the scripts and rebuttals, discussed above, and that are submitted as Attachments 2 and 3 to the declaration of Ann Stahl. The scripts we found included variations of the home standard talk off, the job standard talk off, the official talk off, the Jim Lewis closing script, and other variations on the closing script. **Attachment 10** is a true and correct copy of photographs of the standard talk off scripts we found on a number of the collector's desks. **Attachment 11** are true and correct copies of examples of the various closing scripts, and other closer instructions we found on collectors' desks at the Maple location. **Attachment 12** are true and correct copies of examples of the rebuttals we found on collectors' desk at the Maple location.

14. Attached to a white board adjacent to desk 2 in room A of this office was a guideline containing rebuttals, including one responding to debtors who express that they want to speak with the creditor. The rebuttal to this request states: "Our client doesn't deal with the general public [sic] you'll only see one of our attorneys when you go to court. We correlate with every major county & sheriffs department through out the United States. Whatever office that is closest to your county is where our attorneys will be coming out of, they will represent our main corporation which is here in California." **Attachment 13** is a true and correct copy of this rebuttal sheet taped to the whiteboard in room A at 109 Maple Street. Also found at this location were some samples of company quizzes which

5

were similar to the quizzes I saw at the Rincon location, discussed in paragraph 9 above, and to the quiz submitted as Attachment 35 to the declaration of Ann Stahl.

15. **Additional related debt collection companies**. At the Maple street location, we found evidence of related debt collection companies. Taped to the door of room F an there was email exchange between Ms. O'Neill and Wayne Lunsford, and presumably other managers, regarding top ten collectors, and the collections for eight of Defendants' collections offices. **Attachment 14** is a true and correct redacted copy of this email exchange.

16. We found documents indicating that the companies called Raincross Filing Services and National Filing Services were run out of this office. However, documents found at this location also referenced numerous other company names. **Attachment 15** is a true and correct copy of a telephone list on the wall of the room marked A in attachment 8. This telephone list includes the contact information for Raincross Filing Services, some of the business entity defendants, and other collection companies discussed in the declaration of Ann Stahl. The telephone list also includes telephone numbers for the corporate office, including the telephone number for Shewan who is stated as the "manager accounting & payroll." We also found a copy of the Heavy Hitters Investments Standard Operating procedures at the 190 N. Maple Street location in the third drawer of desk 3 in room B. **Attachment 16** is a true and correct copy of the Heavy Hitters Investments Standard Operating Procedures.

17. I went three of Defendants' business locations–980 Montecito Dr., Suite 205; 495 E. Rincon St., Suites 201 and 204; and 109 N. Maple St., Suite C. The location at 980 Montecito Drive appeared to be the corporate headquarters, while the Rincon and Maple street locations appeared to be where the collectors were based. As discussed above, on the desks of the Rincon and Maple street locations, I saw numerous scripts, rebuttals, and other collector instructions loose

on the desks, and in binders, or folders. I did not see any scripts that differed in substance from those described in paragraphs 6-9, 13, 14 above, and attached as Attachments 3, 4, 5, 6, 10, 11, 12, and 14 to my declaration.

18. While reviewing the documents at the three business offices I visited I searched for evidence of lawsuits filed by Defendants against consumers. I did not see any evidence showing that Defendants Begley, Lunsford, or the business entity defendants have filed debt collection lawsuits against any individuals.

19. On October 31, 2011, I received a telephone call from a man named Steve Smith. Mr. Smith told me that he was a "closer" with Asset Filing Services, Inc. ("Asset Filing"), a debt collection company located at 1241 Park Place NE, Cedar Rapids, Iowa 52402. Mr. Smith told me that Asset Filing acted as the Iowa office for the defendants in this matter. He told me that he was calling to find out whether the 30 employees at the Iowa office would be paid. I told him about the asset freeze and receivership resulting from the Temporary Restraining Order entered by the Court relating to the California defendants. Mr. Smith informed me that he had obtained the telephone number for the Los Angeles office of the FTC from the FTC's website and was aware of the complaint filed in this case. Mr. Smith told me that all employees at his office were paid from an account located in Corona, California, which was frozen due to the TRO. I informed Mr. Smith that a hearing relating to the TRO is scheduled for November 7, 2011. I asked Mr. Smith who was the manager of his office, and he told me that Edward Polaco was the manager. Mr. Smith also told me that he would give Mr. Polaco my telephone number. I have not heard back from Mr. Smith, nor have I received a telephone call from Mr. Polaco.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Los Angeles, California on November 1, 2011.

_____
Bruce Gale

# ATTACHMENT 1



**Gale Attachment 1**





**Gale Attachment 1**



