RICHARD WEISSMAN. ESQ.
STATE BAR #54781
12121 WILSHIRE BLVD. SUITE 600
LOS ANGELES, CA 90025
TELEPHONE: (310) 481-6780
FACSIMILE:   (310) 481-6786
E-MAIL: rweissman@rwreceiver.com

RECEIVER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>PLAINTIFF,<br><br>vs.<br><br>RINCON MANAGEMENT SERVICES, LLC, a California limited liability company, also d/b/a "Rincon Debt Management," "Rincon Filing Services," and "Pacific Management Recovery"; PRIME WEST MANAGEMENT RECOVERY, LLC, a Delaware limited liability company; UNION MANAGEMENT SERVICES, LLC, a CALIFORNIA limited liability company, also d/b/a "Union Filing Services"; NATIONAL FILING SERVICES, LLC, a California limited liability company; CITY INVESTMENT SERVICES, LLC, a California limited liability company; GLOBAL FILING SERVICES, LLC, a California limited liability company; PACIFIC MANAGEMENT RECOVERY, LLC a Delaware limited liability company; JASON R. BEGLEY, an individual; and WAYNE W. LUNSFORD, an individual,<br><br>DEFENDANTS. | Case No. ED CV 11 - 01623 VAP (SPx)<br><br>RECEIVER'S EX PARTE APPLICATION FOR INSTRUCTIONS AND ISSUANCE OF:<br>(1) ORDER FOR PERSONAL APPEARANCE BY DEFENDANT JASON BEGLEY TO SHOW CAUSE WHY HE SHOULD NOT BE ORDERED TO TURNOVER POSSESSION OF VALUABLE ASSETS TO RECEIVER FORTHWITH AS ORDERED UNDER THE PRELIMINARY INJUNCTION;<br>(2) ORDER FOR PERSONAL APPEARANCE BY KENNETH PAUL BEGLEY TO SHOW CASE WHY HE SHOULD NOT BE COMPELLED TO TURN OVER POSSESSION OF RECEIVERSHIP ASSETS TO RECEIVER; AND<br>(3) FURTHER ORDERS THE COURT DETERMINES NECESSARY TO OBTAIN COMPLIANCE WITH PRELIMINARY INJUNCTION BY DEFENDANT JASON BEGLEY AND KENNETH PAUL BEGLEY; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF RICHARD WEISSMAN IN SUPPORT THEREOF |

|   |   |
|---|---|
| | ) DATE: To Be Determined |
| | ) TIME: To Be Determined |
| | ) COURTROOM: 2 |
| | ) |

**TO THE HONORABLE VIRGINIA A. PHILLIPS, UNITED STATES DISTRICT COURT JUDGE, AND TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

Richard Weissman, duly appointed Permanent Receiver ("Receiver") under that certain Preliminary Injunction issued herein on November 10, 2011 (Doc. No. 40), submits the following Ex Parte Application for Instructions and For Issuance of: (1) Order For Personal Appearance by Defendant Jason Begley to Show Cause Why He Should Not Be Ordered to Turnover Possession of Valuable Assets to Receiver Forthwith as Ordered under the Preliminary Injunction; (2) Order For Personal Appearance by Kenneth Paul Begley to Show Case Why He Should Not Be Compelled to Turn over Possession of Receivership Assets to Receiver; and (3) Further Orders as the Court Determines Necessary to Obtain Compliance with Preliminary Injunction by Defendant Jason Begley and Kenneth Paul Begley; Memorandum of Points and Authorities and Declaration of Richard Weissman in Support Thereof.

By this Application, the Receiver is requesting instructions and Orders from the Court to enforce the Preliminary Injunction based upon the following facts:

    A.    In accordance with the Temporary Restraining Order and Order to Show Cause Order to Preliminary Injunction issued herein on October 11, 2011 (Docket ("Doc.") No. 5), Defendant Jason S. Begley ("Jason") submitted his Financial Statement, dated November 2, 2011, ("Financial Statement") to counsel for Plaintiff Federal Trade Commission ("Plaintiff"), disclosing assets held by Jason.

    B.    In his Financial Statement, Jason stated that Skyridge Legacy Trust had purchased gold and silver coins ("Coins") having a value of $300,000 at the time of purchase ("Coins"). Jason is/was the trustee for the Skyridge Legacy Trust. Jason had

advised Plaintiff's counsel the Coins were located at Jason's residence in Riverside, California. The Receiver made multiple demands for turnover of the Coins, but Jason and his counsel failed to respond to the demands and failed to turn over possession of the Coins.

C. On April 6, 2012, the Receiver was advised by Jason and his counsel that all of the Coins had been transferred on approximately November 24, 2011, and were now in the possession of Jason's father, Kenneth Paul Begley ("K. P. Begley"), a resident of Anderson, California. Between April 6, 2012 and April 16, 2012, the Receiver placed two (2) telephone calls to K.P. Begley at the telephone number given to him by Defendant Jason. Two voice messages to call the Receiver were left by the Receiver on K.P. Begley's answering machine. K.P. Begley has not responded to those messages. On April 17, 2012, the Receiver sent a demand letter to K.P. Begley ("Demand Letter"), via certified mail, demanding turnover of the Coins. A true and correct copy of the Demand Letter sent to J.P. Begley is attached hereto marked as Exhibit I and is incorporated herein by this reference.

D. Jason failed to turn over the Coins to the Receiver following entry of the Preliminary Injunction on November 10, 2011 (Doc. No. 40.)

E. Despite multiple demands by the Receiver, Jason failed and refused to surrender possession of the Coins in his possession or subject to his control.

F. Based upon the foregoing facts and circumstances, the Receiver requests the Court to: (1) order the personal appearances before this Court of Defendant Jason R. Begley and Kenneth Paul Begley, respectively, to show cause why both of them should not be ordered to deliver forthwith to the Receiver the subject Coins, and (2) such other relief as the Court determines necessary to obtain full compliance with the Preliminary Injunction by Jason R. Begley and Kenneth Paul Begley.

This Ex Parte Application is based upon this Ex Parte Application, the Memorandum of Points and Authorities and Declaration of Richard Weissman submitted in support thereof; the pleadings and orders on file herein, including, without limitation,

the Court's Preliminary Injunction entered on November 10, 2011, and upon such other and further oral and documentary evidence as may be considered by the Court

DATED: April 24, 2012          Respectfully submitted,

By: _____
RICHARD WEISSMAN,
Receiver

4

## I. PRELIMINARY STATEMENT.

Plaintiff Federal Trade Commission ("FTC") filed this action to obtain preliminary and permanent injunctive relief, and to enjoin and restrain continuing violations of the Federal Fair Debt Collection Practices Act by the named Defendants, Jason R. Begley ("Jason"), an individual, and Wayne W. Lunsford, an individual ("Lundsford") (collectively, "Individual Defendants"), individually and through Rincon Management Services, LLC also d/b/a "Rincon Debt Management," "Rincon Filing Services," and "Pacific Management Recovery"; Prime West Management Recovery, LLC; Union Management Services, LLC also d/b/a "Union Filing Services"; National Filing Services, LLC; City Investment Services, LLC; Global Filing Services, LLC; Pacific Management Recovery, LLC ("Original Receivership Defendants") and their successors, assigns and affiliates that conduct any business which is related to the debt collection business that the Receiver has reason to believe are owned or controlled in whole or in part by the Individual Defendants. (*See,* Temporary Restraining Order filed herein on October 11, 2011 (Doc. No. 5).)

In its Complaint, the FTC alleged that Individual Defendants were engaged in debt collection and that, in the course of this business, Individual Defendants engaged in conduct which violated the Federal Fair Debt Collection Act, 15 U.S.C. §1692, et. seq., and violated Section 5(a) of the Fair Trade Commission Act, 15 U.S.C. §45(a). (Doc. No. 1.)

The Receiver was initially appointed pursuant to a Temporary Restraining Order and Order Appointing Receiver ("TRO") issued on October 11, 2011 (Doc. No. 5). The TRO provided that each of the Individual Defendants was to provide the FTC with a financial statement, describing the Individual Defendants' assets. (TRO, Section III (A)). On or about November 2, 2011, Jason submitted a Financial Statement to the FTC as required by the TRO. A redacted copy of page 14 of Jason's Financial Statement is

## I. PRELIMINARY STATEMENT.

Plaintiff Federal Trade Commission ("FTC") filed this action to obtain preliminary and permanent injunctive relief, and to enjoin and restrain continuing violations of the Federal Fair Debt Collection Practices Act by the named Defendants, Jason R. Begley ("Jason"), an individual, and Wayne W. Lunsford, an individual ("Lundsford") (collectively, "Individual Defendants"), individually and through Rincon Management Services, LLC also d/b/a "Rincon Debt Management," "Rincon Filing Services," and "Pacific Management Recovery"; Prime West Management Recovery, LLC; Union Management Services, LLC also d/b/a "Union Filing Services"; National Filing Services, LLC; City Investment Services, LLC; Global Filing Services, LLC; Pacific Management Recovery, LLC ("Original Receivership Defendants") and their successors, assigns and affiliates that conduct any business which is related to the debt collection business that the Receiver has reason to believe are owned or controlled in whole or in part by the Individual Defendants. (*See,* Temporary Restraining Order filed herein on October 11, 2011 (Doc. No. 5).)

In its Complaint, the FTC alleged that Individual Defendants were engaged in debt collection and that, in the course of this business, Individual Defendants engaged in conduct which violated the Federal Fair Debt Collection Act, 15 U.S.C. §1692, et. seq., and violated Section 5(a) of the Fair Trade Commission Act, 15 U.S.C. §45(a). (Doc. No. 1.)

The Receiver was initially appointed pursuant to a Temporary Restraining Order and Order Appointing Receiver ("TRO") issued on October 11, 2011 (Doc. No. 5). The TRO provided that each of the Individual Defendants was to provide the FTC with a financial statement, describing the Individual Defendants' assets. (TRO, Section III (A)). On or about November 2, 2011, Jason submitted a Financial Statement to the FTC as required by the TRO. A redacted copy of page 14 of Jason's Financial Statement is

submitted herewith marked as Exhibit A and is incorporated herein by this reference.[1] In Jason's Financial Statement, Jason listed "gold and silver -$200,000 - $300,000," as one of his assets, with a handwritten note that the gold and silver had "a value of $300,000 at purchase." (See page 14 of Jason's Financial Statement, Exhibit A hereto).

In a Declaration submitted by Jason in support of his Financial Statement, Jason identified this asset by the following entry: "8/25/11: $300,000 Purchase of Silver and Gold from California Numismatic. The Silver and Gold is located at my Corona house." A copy of the redacted Declaration of Jason Begley submitted with Jason's Financial Statement on or about November 2, 2011 is attached hereto, marked as Exhibit B and is incorporated herein by this reference. Jason later stated to the Receiver that the gold and silver consisted of gold and silver eagle coins ("Coins"). The Coins were purchased using funds from a Wells Fargo bank account in the name of Skyridge Legacy Trust ("Skyridge"). As reported in the Receiver's First Report Re: Order to Show Cause Re: Issuance of Preliminary Injunction ("First Report") (Doc. No. 30), the funds paid into the Individual Defendants' Trusts (including the Skyridge Legacy Trust) were generated by the Receivership Defendants' debt collection businesses. These facts are verified by the Declaration of Jason Begley (Doc. No. 45-1), which was filed on December 21, 2011 in support of the Defendants' Motion to Modify the Preliminary Injunction (Doc. No. 45) ("Motion to Modify"). In his Declaration, Jason describes the distribution of funds generated by the debt collection entities, through the collection of debt, to Portfolio Investment Financial ("PIF"), and then from PIF to the family trusts created by each of the Individual Defendants, including Skyridge. (See Jason Declaration, ¶¶ 28-30, pp. 12:7-14:2) (Doc. No. 45-1). The flow of funds from the debt collection businesses to PIF and from PIF to the Trusts is outlined on Exhibit A3 to the Jason Declaration (Doc. No. 45-5). For the convenience of the Court, copies of the Jason Declaration and Exhibit A3 thereto

---

[1] The remaining portions of Jason's Financial Statement are excluded to protect potentially privileged financial information. A copy of the complete Financial Statement will be produced for in camera review by the Court upon request.

are submitted herewith, marked collectively as Exhibit C, and are incorporated herein by this reference.

The Receiver verified the transfer of $300,000 from the Skyridge Legacy Trust Account at Wells Fargo Bank to California Numismatic on or about August 25, 2011. A copy of a redacted Wells Fargo Bank Account statement for the Skyridge Legacy Trust account reflecting this transfer is submitted herewith, marked as Exhibit D, and is incorporated herein by this reference. The Coins are clearly assets of the Skyridge Legacy Trust.

When the Court issued the Preliminary Injunction on November 10, 2011, Skyridge was specifically named as a Receivership Defendant, and its assets were placed under the custody and control of the Receiver. (Preliminary Injunction, Section X, ¶¶ A and B.) Accordingly, from and after issuance of the Preliminary Injunction, all of Skyridge's assets were under the custody and control of the Receiver. Under Section XII, A.1., of the Preliminary Injunction, the Individual Defendants were ordered to deliver possession of all assets of the Receivership Defendants, including those of Skyridge, to the Receiver immediately following issuance of the Preliminary Injunction (Doc. No. 40.) Clearly, Jason failed to comply with this part of the Preliminary Injunction and it was his failure to comply timely with the Preliminary Injunction that resulted in the Coins remaining at Jason's house until they were removed by K.P. Begley in late November, 2011, as explained hereinbelow.

The Preliminary Injunction also specifically restrained and enjoined any conduct by the Individual Defendants "[t]ransferring, encumbering, selling, concealing, pledging, hypothecating, assigning, spending, withdrawing, disbursing, conveying, giving, dissipating, or otherwise disposing of any funds, property, coins, ... or other assets, wherever located,...in the actual or constructive possession of the [Individual] Defendants" (See Preliminary Injunction (Doc No. 40), Section II A2, p. 6:14-23)). Jason violated his obligations under this provision of the Preliminary Injunction, as well, by permitting or enabling his father, K.P. Begley, to remove the Coins from Jason's residence, as discussed hereinbelow.

By letter dated February 27, 2012, the Receiver made formal written demand on Jason, through his counsel, John Markham, for the delivery of the Coins to the Receiver. A copy of the Receiver's February 27, 2012 letter to Markham is submitted herewith, marked as Exhibit E and is incorporated herein by this reference. Neither Jason nor his counsel, Markham, responded to the Receiver's February 27, 2012 letter. The Receiver made additional written demands for turnover of the Coins on Markham by emails dated, respectively, March 20, 2012 and March 30, 2012. Copies of these emails are submitted herewith, marked as Exhibits F and G, respectively, and are incorporated herein by this reference. There was no response to these emails.

On April 4, 2012, the Receiver sent a final demand letter to Markham, confirming the Receiver's multiple demands, the Defendants' complete failure to respond and advising Markham that the Receiver would be seeking an Ex Parte Order citing Jason for contempt for failing to comply with his obligation to deliver possession of the Coins, unless the Coins were delivered to the Receiver's offices by noon, on April 5, 2012. A copy of the Receiver's April 4, 2012 letter is submitted herewith marked as Exhibit H and is incorporated herein by this reference.

The Coins were not delivered to the Receiver. Instead, Markham and Jason waited until April 6, 2012 before contacting the Receiver via telephone to discuss the status of the Coins. During that conversation, Jason acknowledged that Skyridge had purchased the Coins in August 2011 and that the Coins had been maintained at his home for a period of time. During this conversation, Jason disclosed for the first time that the Coins had been removed from his house by his father, Kenneth Paul Begley ("K.P. Begley") during the Thanksgiving holiday, on or about November 24, 2011, purportedly without Jason's consent or knowledge. Jason also stated that he had made demand on K.P. Begley to return the Coins but his father, K.P. Begley, has refused to return the Coins. Jason also stated to the Receiver K.P. Begley claimed the Coins as payment on account or as an offset against loans made by K.P. Begley to Jason prior to the commencement of this action and the Receivership.

8

1  Jason further stated that his father, K. P. Begley, was a fishing and hunting guide
2  throughout Northern California and the Northwestern United States and Canada. Jason
3  stated that his father essentially lived in a trailer, although he has a permanent residence in
4  Anderson, California (below Redding, California). Jason stated that he did not know the
5  actual street address in Anderson and confirmed that Jason had not been there since
6  approximately 1996. Jason provided the Receiver with K.P. Begley's cell telephone
7  number, which the Receiver called on April 6, 2012. The Receiver left a voice message on
8  that date and on April 12, 2012, requesting that K. P. Begley contact the Receiver as soon
9  as possible to discuss the Coins.

On April 17, 2012, the Receiver sent a letter, together with a copy of the Preliminary Injunction via overnight mail to K.P. Begley's address, in Anderson, California, demanding the immediate turnover of the Coins to the Receiver. A copy of the Receiver's April 17, 2012 demand letter to K.P. Begley is submitted herewith, marked as Exhibit I and is incorporated herein by this reference. To the date of this Ex Parte Application, the Receiver has not received any response of any type from K.P. Begley. The current location of the Coins is presently unknown.

Based upon the foregoing facts and circumstances, the Receiver has filed this Ex Parte Application seeking instructions and Orders: (1) requiring the personal appearances of Jason R. Begley and Kenneth Paul Begley before this Court to show cause why the Court should not order them to turn over forthwith to the Receiver possession of the Coins; and (2) for such additional relief as the Court determines necessary and appropriate to enforce the Preliminary Injunction.

## II. AN ORDER CITING JASON BEGLEY FOR CONTEMPT IS PROPER

The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing, by clear and convincing evidence, that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply. *F.T.C. v. Affordable Media* 179 F.3d 1228, 1239 (9th Cir. 1999); *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n. 9

(9th Cir. 1992).

Nevertheless, the Receiver is not at this time requesting the Court to cite Jason for his contemptuous actions which violate the Preliminary Injunction. Alternatively, the Receiver suggests a practical solution to Jason's secreting the valuable gold and silver Coins: the Court is requested to issue a specific and direct Order for the personal appearances of both Jason and K.P. Begley before this Court to show cause why the Court should not issue direct orders to Jason and K.P. Begley, jointly and severally, to deliver (turnover) forthwith to the Receiver all of the subject Coins. A joint turnover Order would warrant an ultimate sanction of civil contempt if either or both refuse to comply with the "Turnover Order." Jason R. Begley is already a party to this action and the Court has personal jurisdiction over him. K.P. Begley is not currently a party and ancillary personal jurisdiction must be obtained over him as discussed hereinbelow.

### III    ISSUANCE OF AN ORDER TO SHOW CAUSE AGAINST K.P. BEGLEY IS NECESSARY AND PROPER IN THIS CASE.

A receiver may proceed summarily to recover money belonging to the receivership by petition to the appointing court for an order to show cause against a possessor not a party to the original action. *United States v. Arizona Fuels Corp.*, 739 F.2d 455, 458 (9th Cir. 1984); see also 2 Clark on Receivers § 333 (3d ed. 1959) ("One having property belonging to a receiver must deliver it up."). District Courts enforce such orders in conjunction with lawsuits filed by government agencies on behalf of injured consumers. Pursuant to the exercise of its broad equitable powers to protect the assets of the receivership estate, this Court may order non-parties to turn over receivership assets to the Receiver. See, *Federal Trade Commission v. Productive Marketing, Inc.*, 136 F.Supp.2d 1096 (C.D. Calif. 2001); *Federal Trade Commission v. Pacific First Benefit, L.L.C., et. al.*, 472 F.Supp.2d 981 (N.D.Ill.2007); *Eller Industries v. Indian Motorcycle Manufacturing*, 29 F.Supp. 369 (D.Col.1995). Receivers are also permitted to proceed summarily where third parties' claims are premised on equitable rights, like disgorgement, see *SEC v. Wencke*, 783 F.2d 829, 836 (9th Cir. 1986), or setoff of pre-receivership claims. See *United*

*States v. Ariz. Fuels Corp.*, 739 F.2d 455, 456, 459 (9th Cir. 1984) (order to show cause and the subsequent order to repay the funds were in personam decrees directed to nonparty over which the court had jurisdiction.)  To the extent that K. P. Begley may have asserted a right to a payment or offset of a pre-receivership debt due him by Defendant Jason Begley, K.P. Begley was not justified in exercising "self-help" in removing the Coins as payment on account or offset of his son's alleged pre-receivership debt. K.P. Begley must first deliver the Coins, which are clearly Receivership assets, to the Receiver to be held and preserved pending further order of Court. If K.P. Begley submits an appropriate creditor's claim to this Court for the pre-receivership debt allegedly due him, it will be subject to adjudication in due course.  K.P. Begley's taking of the Coins, on any basis, patently violates the terms of the Preliminary Injunction. *United States v. Ariz. Fuels Corp., supra, at p. 457.*  In this case, K.P. Begley removed receivership property from Riverside, California.  Based upon Jason Begley's statements, K.P. Begley took the Coins, which were clearly receivership property. In such an instance, service of the Preliminary Injunction and personal service of the Order to Show Cause to appear, such as the one requested by the Receiver, affords the new party time and the right to appear and defend against any claims asserted by the Receiver, as are required to satisfy due process. *United States v. Ariz. Fuels Corp.*, 739 F.2d 455, 456, 459 (9th Cir. 1984) (service of preliminary injunction and order to show cause sufficient to secure personal jurisdiction on third party holding receivership funds). "[S]ummary proceedings satisfy due process so long as there is adequate notice and an opportunity to be heard." *SEC v. American Capital Investments, Inc*, 98 F.3d 1133, 1146 (9th Cir. 1996), abrogated on other grounds by *Steel v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998).

By serving the Order to Show Cause on K.P. Begley, the Receiver will ensure that the Court has personal jurisdiction over K.P. Begley and, through the process of hearings on the order to show cause and further briefing schedule and hearings, if required, all due process requirements are more than satisfied. *United States v. Ariz. Fuels Corp.*, 739 F.2d at p. 459.  It is submitted that issuance of an Order for K.P. Begley's appearance before

this Court to show cause why the Coins should not be turned over to the Receiver is required to ensure that the Court obtains personal jurisdiction over K.P. Begley and that all assets become subject to the Court's control and potentially available for redress of injured victims claims resulting from the Defendants' conduct and appropriate third party creditors' claims.

For all of the reasons stated above, the Receiver respectfully requests the Court to issue an order in the form of the Proposed Order submitted concurrently herewith.

DATED: April 24, 2012

Respectfully submitted,

By _____
RICHARD WEISSMAN
Receiver